IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JENNY BETH JENKINSON,

                                  Plaintiff,

     v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

                                  Defendant.

OPINION AND ORDER

13-cv-76-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). An administrative law judge heard the matter and concluded that plaintiff Jenny Beth Jenkinson has the severe impairments of fibromyalgia, depression and post traumatic stress disorder, but is not disabled from performing some of the work she has done in the past as well as other jobs existing in the national economy. Plaintiff argues that the commissioner's decision is wrong in two major respects. First, the administrative law judge's questioning of the vocational expert was flawed because he used the term "limited but satisfactory ability" to describe plaintiff's moderate limitations in such things as maintaining attention and concentration or completing a normal workday or workweek without interruption, but did not explain what he meant by that term. Second, the Social Security Appeals Council erred in not considering

a fibromyalgia medical source statement and a mental work capacity report completed by plaintiff's physician on March 29, 2012 and received by the agency in May 2012, six months after the administrative law judge issued his decision.  Plaintiff seeks a remand of the case the commissioner under sentence six of 42 U.S.C. § 405(g) to consider the new evidence.

I conclude that plaintiff has failed to show that either of her challenges to the commissioner's decision requires a remand.  As to the first one, the administrative law judge gave an adequate explanation for his use of the term "limited but satisfactory ability" in determining plaintiff's residual functional capacity.  As to plaintiff's second challenge, she has failed to show either that good cause existed for her counsel's failure to submit the information from her treating physician or that the information was new and material.

The following facts are drawn from the administrative record (AR).

RECORD FACTS

Plaintiff Jenny Beth Jenkinson was born in May 1984 and was 25 on September 10, 2009, when she filed her application for disability benefits.  She did not engage in substantial gainful activity after she applied for benefits on September 10, 2009, although between September 2010 to October 2011 she had worked for a temporary service as a certified nursing assistant intermittently as needed.  AR 31.  In her application, she listed fibromyalgia as her reason for seeking benefits, AR 177, but her medical records show that she saw doctors frequently for complaints of other ailments as well, including polycystic ovarian syndrome, attention deficit hyperactivity disorder, depression, obesity and migraine

headaches.

At her December 5, 2011 hearing before the administrative law judge, plaintiff testified that she was not employed at the time and had not been employed since October 25 of that year, when she worked as a certified nursing assistant on an as needed basis. AR 50. She described her fibromyalgia pain as being either throbbing or sharp and stabbing, depending on the location and the weather. AR 51-52. She walked for exercise, but only about three blocks at a time, and was able to do only a few chores around the house. AR 55-56. She said she could not play outside with her children, AR 57, could not go grocery shopping by herself, AR 58, and found that neither yoga nor pilates helped her, AR 59-60.

Plaintiff characterized her former work as a certified nursing assistant as being independent, filling in for other nurses who could not travel. AR 62. In that job, she sat down while she was taking people's blood pressure and doing paperwork, then stood to measure height and weight and take body measurements, but the work was for only four hours a day. AR 63-64. The other half of the job (which she said took eight hours) consisted of giving results to the people who had been tested. AR 63. She found the job too stressful so she quit after 13 months. Id. Before that she had worked in a sedentary position at Lands' End for two months but left it because she found sitting for eight hours too difficult. AR 63-64. In earlier jobs, she had worked for Taco Bell, Kohl's and Copps grocery. AR 64.

Plaintiff told the administrative law judge that she was not taking any medications at the time but that in the past she had taken Lyrica for her fibromyalgia, Adderall for her

3

ADHD, Vicodin for pain and Cebrex for her depression. AR 65-66. She also said she used an inhaler for athletic-induced asthma, AR 66, and that she smoked about half a pack of cigarettes a day but did not drink. Id. She added that her depression affected her ability to form social relationships and was probably attributable to her fibromyalgia. AR 67.

At plaintiff's hearing, the administrative law judge assessed plaintiff's past work as including light, unskilled work in the form of cashier and fast food worker, AR 72, and medium, semi-skilled work as a certified nursing assistant, AR 72-73, along with clothing stocker, which was heavy, semi-skilled work, AR 73, and catalogue sales order clerk, which was sedentary, semi-skilled work. Id. He posed an extended hypothetical question to the vocational expert, asking whether plaintiff's past work as fast food worker, order clerk and cashier could be performed by an individual of plaintiff's age, with the same education and work history, having the physical limitations of light work, with no climbing, crawling or kneeling and only occasional climbing of ramps or stairs, stooping, bending or crouching, and who had limited but satisfactory ability to deal with the public, interact with supervisors, maintain attention and concentration, understand, remember and carry out detailed instructions and complete a normal workday and work week without interruption from psychologically based symptoms or unreasonable rest periods. AR 74. The expert testified that such an individual could perform that work. In addition, the individual could handle work as a parking lot attendant, ticket taker and machine tender, as well as a number of jobs at the sedentary level, such as order clerk or credit checker. AR 74-75. Upon questioning by plaintiff's counsel, the expert testified that a person who could work only two to three

days a week and only on a part-time basis would be unable to perform any of the jobs he had identified. AR 77-78. The administrative law judge adopted the vocational expert's finding that a person with plaintiff's ability and limitations could perform her past relevant work as a fast food worker, order clerk or cashier, AR 38, as well as other occupations requiring light exertional levels.

In his written decision, the administrative law judge found that none of plaintiff's physical impairments alone or in combination met or medically equaled a medical listing in 20 C.F.R. Part 404, Subpart P, App. 1. AR 32. In assessing whether plaintiff's mental impairments met the "B criteria" of the listings for affective disorders (Listing 12.04) or for anxiety-related disorders (Listing 12.06), he found that plaintiff did not have marked restrictions of activities of daily living, maintaining social functioning or maintaining concentration, persistence and pace and she had no episodes of decompensation. AR 33. (The term "B criteria" refers to four impairments that affect the determination whether a person is disabled for social security purposes. To be found disabled, a claimant must have one of the A criteria, that is, a demonstrated loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one" of a number of problems, such as perceptual or thinking disturbances resulting in hallucinations or delusions, or a loss of 15 I.Q. points, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.01(A), *plus* at least two of the four B criteria, one of which is "marked difficulties in maintaining concentration, persistence and pace. Id. at (B).") The administrative law judge found that plaintiff did have mild restrictions in activities of daily living, mild to moderate difficulties in social

5

functioning and moderate difficulties with regard to concentration, persistence and pace. Id.

In assessing plaintiff's residual functional capacity, the administrative law judge found that plaintiff had a limited but satisfactory ability to relate to coworkers, deal with the public, interact with supervisors, maintain attention and concentration and understand, remember and carry out detailed instructions, as well as to complete a normal workday or workweek without interruptions from psychologically based symptoms or unreasonable rest periods. AR 34. In making this finding, he observed that when plaintiff was taking her prescribed medication, she did well. In 2004, her treating doctor, Dr. Jared Harter, found plaintiff to be alert and oriented, appropriately dressed and groomed, with a euthymic mood and full range of affect. Her speech was normal in rate and tone and her thought processes were coherent. AR 35 (citing Harter progress note, AR 280). However, when she stopped taking the medication, as she did in 2007, her condition deteriorated significantly. Her doctor recommended resumption of the medication and she "experienced significant improvement." Id. In March 2008, she was doing well psychiatrically, sleeping well and attempting to go back to work. A year later, she was still doing well. Id. Fifteen months later, she told a consulting psychologist, Dr. Richard Hurlbut, that she had friends and "hung out" with them often, went shopping, played with her children, ran errands, was involved in Cub Scouts and played Frisbee. Id. (citing Hurlbut rep., AR 393-97).

As for plaintiff's fibromyalgia, the administrative law judge noted that plaintiff had seen a physician, Dr. Todd Rave, in December 2009 and that Rave had found normal,

6

symmetrical strength in her upper and lower extremities and symmetric deep tendon reflexes in her "biceps, triceps, brachioradialis, patellar and Achilles." AR 36 (citing Rave rep., AR 359). Her gait and station were "relatively normal but a bit antalgic." Id. Dr. Mazin Ellias saw plaintiff for a consultation on February 2, 2010 and classified her fibromyalgia as in the borderline range. AR 36 (citing Ellias rep., AR 377).

The administrative law judge found that plaintiff had medically determinable impairments that could cause the symptoms she had described, but he found that her statements about the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the residual functional capacity he had assessed earlier in his decision. His opinion rested on Dr. Ellias's determination that plaintiff's fibromyalgia was only borderline, her "consistently benign" physical examination results, AR 37, and plaintiff's own activity report, as well as her statements to Dr. Hurlbut. He also took into consideration the report of agency physician Robert Callear, who determined that plaintiff could do light work with additional postural and environmental limitations. AR 38 (citing Callear rep., AR 399-406).

When it came to plaintiff's alleged mental limitations caused by her depression and attention deficit hyperactivity disorder, the administrative law judge placed little weight on those limitations because plaintiff had not been compliant with the medication regimen prescribed by her doctors and because her use of marijuana limited the range of treatment options. Id. He noted that when plaintiff was compliant, she had the mental capacity for unskilled work, with moderate limitations on her ability to understand, remember and carry

out detailed instructions, maintain attention and concentration, work in proximity to others and complete a normal workday or workweek without interruption. AR 38 (citing Edelman Psychiatric Review, AR 417). He concluded that she could perform her past relevant work as fast food worker, cashier and order clerk, as well as other jobs requiring light or sedentary exertion. AR 39.

The administrative law judge submitted his decision on December 30, 2011. Sometime thereafter, plaintiff retained new counsel, replacing the lawyer who had represented him through the hearing. Counsel filed a request for review of the hearing decision and on May 9, 2012, submitted both a Fibromyalgia Medical Source Document and a Mental Work Capacity form prepared by Dr. Alfred Neuhoff of the Aspirus Clinic on March 29, 2012. Dr. Neuhoff said he had treated plaintiff for about ten years, seeing her every one to three months for fibromyalgia, mood disorder, attention deficit hyperactivity disorder, migraines, asthma and other ailments. AR 548. It was his opinion that emotional factors contributed to the severity of plaintiff's symptoms and functional limitations. AR 548. His assessment of plaintiff's ability to work was much less positive than the administrative law judge's. He assessed plaintiff's fibromyalgia pain as severe and constant, AR 549, and believed that she could not sit for more than 30 minutes without having to stand up and she could not stand for more than 30 minutes. Id. In total, she could sit and stand for about four hours. She would need four 20-minute unscheduled breaks each day, during which she would have to lie down, AR 550, and she would be absent from work more than four days each month. AR 551. Neuhoff thought plaintiff would be precluded from

performing work for 15% of the day or more when it came to maintaining concentration and attention, being punctual and maintaining regular attendance and completing a normal workday or work week without interruption from psychologically based symptoms, as well as getting along with coworkers and accepting instructions from supervisors. AR 554-55.

The Social Security Appeals Council did not take the newly submitted evidence into consideration. Instead, it denied plaintiff's request for review without comment, leaving the administrative law judge's decision the final decision of the commissioner. AR 1.

## OPINION

### A. "Limited but Satisfactory Ability"

Plaintiff contends that the administrative law judge erred in using the term, "limited but satisfactory ability" when he described her mental functioning to the vocational expert at her hearing. This, she says, was improper because he had found that she had moderate limitations of concentration, persistence and pace when he was considering whether she met the B criteria for mental limitations and he should have used this term with the vocational expert.

The administrative law judge explained that he used the term "moderate limitations of concentration, persistence" when considering whether plaintiff met the B criteria. The limitations listed in the B criteria are not tied directly to residual functional capacity but are used to rate the severity of mental impairments in steps 2 and 3 of the disability assessment. When it came to determining the assessment of plaintiff's residual functional capacity, he

performed a more detailed assessment: he itemized various functions contained in the broad categories of the B criteria. In doing this he found plaintiff credible when she said she had the symptoms of which she complained but less credible when she said that the symptoms would prevent her from relating satisfactorily with co-workers, dealing with the public, interacting with supervisors, maintaining attention and concentration and understanding, remembering and carrying out detailed instructions. He reviewed the record evidence showing how much plaintiff's outlook and ability to function improved when she was compliant with the medication regimen prescribed by her doctors. He placed weight on Dr. Hurlbut's report of plaintiff's socializing, her ability to take care of her house, shop for groceries and play outside with her children, as well as her involvement in Cub Scouts. AR 35. The administrative law judge did not err in deciding that although plaintiff had some areas in which she was limited by some mental and emotional problems, she had the ability to perform satisfactorily in the jobs identified by the vocational expert when she took her medication. (Nothing in the record suggests that adverse side effects were a reason for plaintiff's failure to take her medication, although there were times when she stopped because she was pregnant or wanted to be.)

       The hypothetical questions the administrative law judge put to the vocational expert were adequate to convey plaintiff's abilities and limitations and his explanation supports his use of the term in this particular case. The vocational expert expressed no difficulty in understanding what the administrative law judge meant when he used the term "limited but satisfactory abilities" in referring to plaintiff's ability to perform light and sedentary jobs.

I conclude that plaintiff cannot prevail on her first claim.

(Plaintiff devoted a few pages in both his initial brief and his reply to what he said was the administrative law judge's failure to explain why he thought plaintiff should not have any strict production quotas.  Because I can find nothing in the record that shows that production quotas were ever an issue in this case, I will ignore the issue.)


B. Report of Dr. Alfred Neuhoff

To obtain a remand requiring the Appeals Council to review late-filed evidence, a plaintiff must show both that there is "new evidence that is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997); see also Schmidt v. Barnhart, 395 F.3d 737, 741-42 (7th Cir. 2005); 42 U.S.C. § 405(g).  The burden is on the plaintiff to show that he or she can meet each of the three criteria:  the material must be new, that is, it must not be cumulative of what is already in the record; it must be material, that is, it must be relevant to the claimant's condition during the time period for which benefits were sought, probative and likely to change the outcome of the case; and the proponent must show good cause for the failure to submit the material in time for it to be incorporated into the record.  Carolyn A. Kubitschek and Jon C. Durbin, Social Security Disability; Law and Procedure in Federal Court, § 9:58 (2012).

In this instance, plaintiff cannot show good cause.  She was represented by counsel before the agency and through the administrative hearing.  Her only argument in this regard

11

is that her attorney was a novice in the area. That may be true, but it is not sufficient to require a remand. Even a novice would know the importance of timely submission of any and all evidence bearing on his client's health problems. The usual rule in this circuit is that a claimant represented by counsel "is presumed to have made his best case before the ALJ." Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007). Plaintiff has not demonstrated that the rule should be ignored in this instance, although he quotes Judge Friendly's characterization of the Social Security regulations as "Byzantine," and "almost unintelligible to the uninitiated," Friedman v. Burger, 547 F.2d 724, 727 n.7 (2d Cir. 1976). It is doubtful that Judge Friendly would have included the submission of relevant medical records as one of the Byzantine aspects of the Social Security Act.

In any event, even if I overlooked counsel's failure in this regard, the material that plaintiff wants to submit is not "new" in the sense that it could not have been obtained before plaintiff's hearing. According to his report, Dr. Neuhoff had been treating plaintiff for ten years, so he could have submitted records of earlier treatment and he would have had the necessary information for a report long before he prepared the report in May 2012. Perkins, 107 F.3d at 1296 ("'new' means evidence "not in existence or *available* to the claimant at the time of the administrative proceeding") (quoting Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993)) (emphasis added). In Perkins, the court of appeals noted that although the doctor's evaluations were not in existence at the time of the claimant's hearing, the information on which he based his conclusions was and therefore his report did not qualify as "new."

In short, plaintiff has not shown that she is entitled to a remand of this case to the commissioner under 42 U.S.C. § 405(g).

ORDER

IT IS ORDERED that plaintiff Jenny Beth Jenkinson's motion for summary judgment, dkt. #11, and her request for a remand of this case to defendant Carolyn W. Colvin, Acting Commissioner of Social Security, are DENIED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 20th day of December, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge